**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **QUADRAY HOBBS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No.: 5:22-cv-00283-TES-CHW** |
| | : | |
| **DOOLY STATE PRISON, *et al.*,** | : | **Proceedings Under 42 U.S.C. § 1983** |
| | : | **Before the U.S. Magistrate Judge** |
| **Defendants.** | : | |
| | : | |

**REPORT AND RECOMMENDATION**

Plaintiff Quadray Hobbs, a state inmate, filed a *pro se* civil rights complaint seeking relief under 42 U.S.C. § 1983 regarding his confinement in Dooly State Prison (DSP). (Doc. 1). The remaining defendant, Defendant Glover, filed a pre-answer motion to dismiss citing Plaintiff's failure to exhaust. (Doc. 39). Defendant also argues that Plaintiff's claims for money damages against Defendant in his official capacity are barred by the Eleventh Amendment. (*Id.*) Plaintiff filed several documents but did not respond to the motion. Because Plaintiff failed to exhaust his available remedies before bringing this action, it is **RECOMMENDED** that Defendant's motion to dismiss (Doc. 39) be **GRANTED** and that Plaintiff's claims against Defendant be **DISMISSED without prejudice.**

**BACKGROUND**

Plaintiff brought this action on July 22, 2022, alleging that on multiple dates in 2020 and 2021, prison staff allowed inmates to enter the dorms and assault him while staff failed to protect him or intervene. (Doc. 1). Following screening of Plaintiff's complaint under 28 U.S.C. § 1915A, the Court allowed Plaintiff's Eighth Amendment deliberate indifference to safety claims to

proceed against Defendant Glover for his alleged failure to intervene when an inmate attacked Plaintiff on November 6, 2021. (Docs. 6, 16). Defendant filed a timely pre-answer motion to dismiss arguing that Plaintiff failed to exhaust the administrative remedies available to him. (Doc. 39). The Court gave Plaintiff notice of the motion to dismiss and ordered him to respond. (Doc. 41). Plaintiff filed a demand for a jury trial (Doc. 43), a discovery request (Doc. 44), a letter (Doc. 45), two motions to appoint counsel (Docs. 46; 48, p. 2), and a motion for default judgment (Doc. 48), but he did not respond to the motion to dismiss.

The Exhaustion Requirement

The Prison Litigation Reform Act (PLRA) requires prisoners to exhaust available administrative remedies before bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law. 42 U.S.C. § 1997e(a). Exhaustion in this context means proper exhaustion: prisoners must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in a federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). The exhaustion requirement is "designed to eliminate unwarranted federal court interference with the administration of prisons" by "seek[ing] to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008).

The Eleventh Circuit's *Turner* opinion establishes a two-step process for reviewing motions to dismiss based on a prisoner's failure to exhaust. A reviewing court first "looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* at 1082. Second, if the complaint is not dismissed under step one, "the court then

proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. …Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id*. at 1082-83 (internal citations omitted). As failure to exhaust is an affirmative defense under the PLRA, "defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id.*

Grievance Procedure

The grievance procedure applicable in this case is set by the Georgia Department of Corrections (GDOC) Standard Operating Procedure No. 227.02. (Doc. 39-2, Attachment 1). Under that procedure, prisoners must follow a two-step process by first filing an "original grievance" within 10 days of the grievable issue. (*Id*. at 8).[1] Prisoners may file outside of the 10-day window if they show good cause. (*Id*.). The original grievance is then screened by prison staff, and typically either rejected or accepted for processing. (*Id*. at 9). The grievance procedure further provides that a response of some kind is due within 40 days of the date of a grievance's submission, with the possibility of a 10-day extension on written notice. (*Id*. at 11). On expiration of the response period or on the prisoner's receipt of a response, the prisoner must proceed to step two by filing a "central office appeal" within seven days. (*Id*. at 14). The grievance procedure then contemplates a 120-day period in which the Commissioner may give a response. (*Id*. at 15).

**ANALYSIS**

Defendant moves to dismiss Plaintiff's complaint under the PLRA's exhaustion requirement. (Doc. 17). He argues that because Plaintiff did not file a grievance about the incident

---

[1] The referenced page numbers cite to the policy itself and not the document to which the policy was attached.

underlying his claim, he failed to exhaust his available administrative remedies. (*Id.*) In addition to exhaustion, Defendant also argues that any claims for damages against him in his official capacity are barred under the Eleventh Amendment and sovereign immunity. (*Id.*)

1. <u>Plaintiff failed to exhaust the available administrative remedies</u>.

Determining whether dismissal is appropriate requires applying the test outlined in *Turner* to determine whether Plaintiff failed to exhaust the administrative remedies available to him. In first considering whether dismissal for failure to exhaust is appropriate under *Turner*'s step one, a court must first consider all the alleged facts construed in favor of Plaintiff when the facts conflict. Plaintiff acknowledges that DSP has a grievance procedure, but claims he did not file a grievance "because when you ask the officers for [a form] they never bring them back" (Doc. 1, p. 3) and that "it was hard to get a grievance." (*Id.*, p. 6). He did not indicate whether he tried to appeal any grievance. (*Id.*, p. 4). The pleadings, construed in Plaintiff's favor, are sufficient to survive under step one of *Turner* because Plaintiff's explanation could be read to suggest that the grievance process was unavailable to him. Under step two of *Turner*, however, the evidence of record shows that Plaintiff failed to exhaust his available administrative remedies prior to filing suit.

At *Turner*'s second step, any disputed facts must be examined to determine whether Plaintiff exhausted the available administrative remedies prior to filing suit. In support of his motion to dismiss for failure to exhaust, Defendant provided the grievances that Plaintiff filed while at DSP, Plaintiff's grievance history, the applicable grievance policy, and a declaration from Tracy Jackson, the chief counselor and grievance coordinator at DSP. (Doc. 39-2). Plaintiff transferred to DSP on September 11, 2020 (*Id.*, p. 44), and his remaining claims concern an incident from November 6, 2021. (Docs. 1, 6, 16). Plaintiff's grievance history log shows that Plaintiff did not file a grievance at DSP until April 7, 2022, at which point he filed 12 grievances

in less than one month. (Doc. 39-2, p. 5, ¶ 14, p. 50-51). Plaintiff was transferred to a different facility in May 2022. (*Id*., p. 43).

Plaintiff filed the following grievances while at DSP:

- Grievance No. 337433: Plaintiff filed Grievance No. 337433 on April 7, 2022, regarding an April 4, 2022 inmate assault that an officer watched without intervening. (Doc. 39-2, p. 53). Because Plaintiff failed to provide enough information to make an investigation feasible, the warden denied this grievance on May 19, 2022. (*Id*., p. 54-55). Plaintiff acknowledged the denial on July 21, 2022, the day before he commenced this suit, but he did not file a central office appeal. (Docs. 1, 39-2, p. 50).
- Grievance No. 337545: Grievance No. 337545, filed on April 11, 2022, concerned Plaintiff being skipped over for shower and meal times on or about April 8, 2022. (Doc. 39-2, p. 57). It did not concern an officer assault.
- Grievance No. 337814: On April 11, 2022, Plaintiff filed Grievance No. 337814 to complain about an income tax check not being deposited into his inmate account despite his having signed for it on January 21, 2022. (Doc. 39-2, p. 62).
- Grievance No. 337815: Plaintiff filed Grievance No. 337815 on April 19, 2022, about an incident on April 7, 2022, when officers forced an inmate into Plaintiff's room. (Doc. 39-2, p. 66). Plaintiff acknowledged that the grievance was filed out of time. (*Id*.) After being told it would be rejected because he had two active grievances pending, he dropped this grievance. (*Id*., p. 67, 68).
- Grievance No. 337816: Grievance No. 337816 was filed on April 20, 2022, and raised issues with Plaintiff's commissary account that occurred on April 12 and 19, 2022. (Doc. 39-2, p. 70). After being told that the grievance would be rejected because he had two pending active grievances, Plaintiff dropped this grievance. (*Id*., p. 71, 72).
- Grievance No. 337950: Plaintiff filed Grievance No. 337950 on April 22, 2022, to challenge Counselor Jackson talking to him about dropping his grievances. (Doc. 39-2, p. 74). Plaintiff alleged she was trying to "force [him] to drop them because she wasn't doing her job properly." (*Id*.) He eventually dropped this grievance. (*Id*., p. 75).

- Grievance No. 338074: Grievance No. 338074 from April 25, 2022, complained that on April 23, 2022, officers refused to leave Plaintiff's cell's flap open to allow air circulation in his cell. (Doc. 39-2, p. 78).
- Grievance No.: 338767: Plaintiff filed Grievance No. 338767 on April 26, 2022, after he was again passed over for a shower on April 25, 2022. (Doc. 39-2, p. 88). This grievance was denied after Plaintiff failed to drop an active grievance. (*Id*., p. 89-91).
- Grievance No.: 338277: Through Grievance No. 338277, filed on May 2, 2022, Plaintiff explained that he had ordered a tablet in April 2021, learned in January 2022 that tablets were not being sold, and had yet to receive the tablet. (Doc. 39-2, p. 86). He asked that the funds be returned to his account. (*Id.*) He explained that the grievance was untimely filed because he was in segregation and did not have a form. (*Id*.) He ultimately dropped this grievance. (*Id*., p. 85).
- Grievance No. 338768: Grievance No. 338768, filed on May 4, 2022, concerns withdrawal of money from Plaintiff's account for court documents. (Doc. 39-2, p. 98).
- Grievance No. 339104: Plaintiff filed Grievance No. 339104 on May 23, 2022, to complain about mail room issues and the misplacement of a check. (Doc. 39-2, p. 105).
- Grievance No. 339582: Grievance No. 339582, filed on May 23, 2022, concerns the chief counselor being unavailable and rescheduling Plaintiff's call out on May 22, 2022. (Doc. 39-2, p. 110).

A. The prison grievance process was available to Plaintiff.

Plaintiff alleges he did not file a grievance because requested forms were not provided or the forms were otherwise difficult to get. (Doc. 1, p. 3-4, 6). This explanation could be construed as an argument that the administrative grievance process was unavailable to him. Courts have outlined three different ways a plaintiff can show that administrative remedies are unavailable:

> The modifier "available" means that an administrative remedy must provide the possibility of some relief. *Id.* at 643. There are three kinds of circumstances that make an administrative remedy unavailable. *Id.* First, an administrative remedy is

> unavailable when the administrative procedure operates as a simple "dead end," with officers unable or consistently unwilling to provide any relief to aggrieved inmates. *Id.* For example, if a handbook required inmates to submit grievances to a particular office and the office disclaims the capacity to consider petitions or if officials have authority but decline to exercise it, then it is unavailable. *Id.* Second, a remedy is unavailable when an administrative scheme is so opaque that it is incapable of use. *Id.* The mechanism may exist to provide relief, but no ordinary prisoner can discern or navigate it. *Id.* at 643-644. Third, a remedy is unavailable when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, and intimidation. *Id.* at 644.

*McDowell v. Bowman*, 2022 WL 4140331, at *3 (11th Cir. Sept. 13, 2022) (citing *Ross Ross v. Blake*, 578 U.S. 632 (2016).

Plaintiff's suggestion he could not take advantage of the grievance process because forms were not provided to him upon request would fall under the third *Ross* exception. The record, however, does not support a finding that Plaintiff was unable to file a grievance after the November 6, 2021 incident.

Plaintiff's blanket allegations suggest that prison staff thwarted him from filing grievances by making the forms hard to get or never bringing him a form. The record contradicts such an argument. Plaintiff admitted that DSP had a grievance process, (Doc. 1, p. 3). As discussed above, he eventually availed himself of this system prior to leaving DSP and commencing suit. Ms. Jackson's declaration also confirms that DSP had a grievance process while Plaintiff was housed there. (Doc. 39-2, p. 2, ¶ 3). She explains that counselors made daily rounds in November 2021, when the incident underlying the Plaintiff's remaining claims occurred, and that inmates could also request grievance forms from any officer. (*Id.*, p. 5-6, ¶ 16). Plaintiff did not respond to the motion to dismiss, but taking Plaintiff's description of the grievance process from his complaint

as true, the Court would have to find that he intended to submit a grievance but had *no* access to a grievance form from September 2020, when Plaintiff transferred to DSP, until April 7, 2022, the first time he submitted a grievance. This is an untenable position to accept based on the record.

Even if Plaintiff's argument that forms were withheld or unavailable were true, it would follow that when forms were available in April 2022, he could have availed himself of the out-of-time/good cause provisions of the grievance policy to grieve the assault incidents raised in his complaint, including the surviving claims stemming from November 6, 2021. However, the grievances he filed show that he failed to file grievances about *any* of the assault incidents from his complaint, much less the operative November 6, 2021 incident.[2] The record demonstrates that Plaintiff knew out-of-time grievances could be filed and possibly accepted for good cause because he filed two out-of-time grievances at DSP, Grievance Nos.: 337815 and 338277. The record does not show that Plaintiff attempted to use the grievance policy or exhaust his claims before filing suit.

The record fails to support that the third *Ross* exception applies to Plaintiff's case. Based on the record before the Court, the grievance process was available to Plaintiff, and he is not excused from the requirement to exhaust.

B. Plaintiff failed to exhaust the available administrative remedies as required.

As the administrative process was available to Plaintiff, the Court must next examine the record to determine whether Plaintiff exhausted as required under the PLRA. The PLRA requires exhaustion *prior* to filing suit. 42 U.S.C. § 1997e(a). Plaintiff's complaint serves as the marker for whether he properly exhausted his available administrative remedies as required. *Harris v. Garner*,

[2] Plaintiff appears to have filed Grievance No. 337816 about the now-dismissed commissary account issues he raised in his complaint.

216 F.3d 970 (11th Cir. 2000). Proper exhaustion means completing the grievance process, from filing a grievance to receiving a decision on appeal, pursuant to the applicable grievance policy. *Woodford*, 548 U.S. at 88. Where Defendant shows that Plaintiff did not file any grievance about the November 6, 2021 incident underlying his claims, Plaintiff could not have properly and fully exhausted. Because Plaintiff did not exhaust his administrative remedies prior to filing suit as required by the PLRA, Plaintiff's complaint must be dismissed under the second step of *Turner*.

2. <u>Plaintiff's claims for money damages are barred against Defendant in his official capacity under the Eleventh Amendment</u>.

Defendant also moves to dismiss any money claims against him in his official capacity. To the extent that Plaintiff seeks to recover money damages against Defendant in his official capacity, such claims would be barred by the Eleventh Amendment and 42 U.S.C. § 1983. *See generally*, *Kentucky v. Graham*, 473 U.S. 159, 169 n. 17. Defendant was employed by the Georgia Department of Corrections at MSP when the incident underlying Plaintiff's claims occurred. The State of Georgia has not waived sovereign immunity, and Section 1983 was not meant to abrogate a state's Eleventh Amendment sovereign immunity, therefore Plaintiff is barred from suing Defendant in his official capacity for damages. Section 1983 itself also precludes any official-capacity claims against Defendant for nominal damages because the state is not a person under the meaning of Section 1983. *Moody v. City of Delray Beach*, 609 F. App'x 966, 967 (11th Cir. 2015) (quoting *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989)). Section 1983 provides no remedy for the Plaintiff against Defendant in his official capacity.

## CONCLUSION

Because the evidence of record demonstrates that Plaintiff did not exhaust his available administrative remedies as required, it is **RECOMMENDED** that Defendant's motion to dismiss

(Doc. 39) be **GRANTED** and that Plaintiff's case be **DISMISSED without prejudice**.

**OBJECTIONS**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof. Any objection is limited in length to **TWENTY (20) PAGES.** *See* M.D. Ga. L.R. 7.4. The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 15th day of December, 2023.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge